**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**PIEZO MANUFACTURING CORPORATION, Respondent.**

**No. 325, Docket 26757.**

United States Court of Appeals
Second Circuit.

Argued April 11, 1961.

Decided May 8, 1961.

Jules Gordon, Atty., National Labor Relations Board, Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Samuel M. Singer and Vincent W. Bradley, Attys., National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

William Chester Taplitz, New York City, for respondent.

Before CLARK, MEDINA and FRIENDLY, Circuit Judges.

PER CURIAM.

The National Labor Relations Board seeks enforcement of its order, reported at 125 N.L.R.B. 686. The Board found

that respondent had violated Section 8(a) (1) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 158(a) (1) in several ways: by urging one employee to discover the names of employees who were attempting to organize a union at its plant; by encouraging another employee to organize a company union; and by discriminatorily laying off or discharging nine employees in a bargaining unit composed of no more than twenty-five employees. All but one of the men laid off had signed cards authorizing the union to act as their bargaining representative, and the lay offs caused the union to lose its majority status in the unit. The Board also found that respondent had unlawfully refused to bargain with the union, within the meaning of Section 8(a) (5) of the Act, 29 U.S.C.A. § 158(a) (5), after it had been requested to do so, by taking the position only a few days after the lay offs that it did not know whether it would recognize the union, because it had no knowledge that the union represented a majority of the employees in the unit. The Board found that this action also violated Section 8(a) (1).

The only question before us is whether the Board's findings are supported by substantial evidence. We conclude that they are.

A finding that Ligh, respondent's vice-president, knew whether or not the employees whom he laid off had signed union authorization cards was not essential to the Board's decision. The lay offs occurred almost immediately after Ligh had been informed that a majority of respondent's production and maintenance employees had selected the union to represent them. The Board could infer both from the timing of the lay offs, and from Ligh's statements made almost contemporaneously with them, that they were intended to discourage respondent's employees from adhering to the union at a period critical to its future at respondent's plant and also to affect the union's majority, which they in fact did. Under these circumstances, the Board was warranted in rejecting respondent's contention that the lay offs were economically motivated.

The unlawful lay offs once established, the finding of refusal to bargain followed as a natural and almost inevitable consequence. Respondent could not lawfully challenge the union's majority after respondent itself had destroyed that majority by its own unfair labor practices.

Enforcement granted.