**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOZANO ENTERPRISES, Respondent.**

No. 18205.

United States Court of Appeals
Ninth Circuit.

June 8, 1963.

Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel,

Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin J. Welles and Peter M. Giesey, Attys., N. L. R. B., Washington, D. C., for petitioner.

Sheppard, Mullin, Richter & Hampton, Frank Simpson III, and Don T. Hibner, Jr., Los Angeles, Cal., for respondent.

Before CHAMBERS and BARNES, Circuit Judges, and CURTIS, District Judge.

CURTIS, District Judge.

The National Labor Relations Board brings this petition pursuant to section 10(e) of the NLRA for enforcement of its order which may be briefly summarized as requiring the respondent to cease and desist from discouraging membership in a labor union of its employees and from otherwise interfering with the members' enjoyment of their right of self-organization and collective bargaining. The order also requires the respondent to reinstate Jose Nabor Villasenor, one of its employees who, the Board found, had been discharged because of his participation in union activities.

The respondent is a California corporation with its office and principal place of business in Los Angeles, where it publishes a Spanish language daily newspaper, *La Opinion.* In April 1961, Jose Nabor Villasenor and Roberto Ocariz, both of whom were linotypists employed by the respondent, joined the Los Angeles Typographical Union, No. 174, and thereafter assisted in the union's organizational efforts in respondent's plant. On October 19, 1961, at the request of both the union and the respondent, the Board made its order ordering a representative election be held in November 1961. During the period from April to November, an effort was being made to organize respondent's employees. During this period Villasenor had about six separate conversations with Andres Laguna, the foreman for the respondent, on each of which occasions Laguna told him not to join the union, that the employees would only be exploited. On August 23, Laguna took Villasenor aside and told him that all the employees

had agreed to the leave the union except Villasenor and Ocariz and that if he would leave the union, he would immediately start making $2.50 per hour and be assured of a job for the rest of his life. He also said that the employees had all worked together happily in the past without the union and that the only thing that the union did was to make promises and exploit the workers. When Villasenor refused to leave the union, Laguna handed him a letter which read as follows:

"Mr. Jose Nabor Villasenor:

"It is with regret that this letter is written to notify you that you are indefinitely suspended from your work.

"The lack of efficiency in the performance of the job assigned to you, as a linotype operator, where it has been found that your production does not meet with the expected level in relation to the rate of wages paid; your apparent disregard of the continuous recommendations of our Editorial Room members, and, finally, numerous complaints about the way time is distracted during your shift, either by talking with fellow-workers or by often engaging in telephone conversations—all of this greatly detrimental to the normal general tasks of the Department—, have determined our decision to dispense with your services.

"Please accept our appreciation for the time you worked with this organization.

LA OPINION
/s/ Jose E. Bravo
Jose E. Bravo, Manager."

Laguna also demanded that Villasenor quit work immediately although it was not yet the end of the work week. When Villasenor asked why he was being fired, he was told that it was because he talked more than two hours every day on the telephone. Villasenor said this was false and he was going to take the matter to the union, whereupon Laguna told him to think it over and if he decided to leave the union to come back and talk to Mr. Bravo, the manager of respondent, who would arrange for him to start earning $2.50 an hour right away.

Villasenor testified that he had never been warned that his work or conduct was unsatisfactory and, in fact, he had received bonuses as a reward for good work during July and August immediately preceding his discharge.

In June, Laguna told Martinez, another linotypist that Villasenor was one of the best operators he had. On August 25, Laguna told Noriega, the make-up man for respondent's newspaper: "Last Wednesday I fired Villasenor because in the office they don't want him here because he is one of the union leaders". In July 1961, Lozano, the president of respondent, called Manzo, another linotypist, to his office where he interrogated him as to why the linotypists had joined the union and asked for the identity of those who had been responsible for bringing the union into the plant. Upon this evidence the Board concluded that the respondent was guilty of unfair practices and that Villasenor had been discharged because of his adherence to the union and not for any misconduct or inefficiency.

■ The respondent's evidence was to the contrary. It seems unnecessary to review it here for we are not concerned with weighing the evidence but rather with determining whether or not there was credible evidence on which the Board could properly make the findings that were made. Although the evidence is in conflict, there is ample evidence to support the findings of the Board.

Respondent contends, however, that there is no evidence to show that Lozano, himself, engaged in any unfair labor practices or that the actions of Laguna expressed management policy.

■ There is ample authority for the proposition that as a general rule an employer is responsible for the unfair labor practices of a supervising employee especially where the latter appears to be acting within the scope of his authority.

National Labor Relations Board v. Armstrong Tire and Rubber Co., C.A.5, 1955, 228 F.2d 159; National Labor Relations Board v. Falls City Creamery Company, C.A.8, 1953, 207 F.2d 820; National Labor Relations Board v. Hart Cotton Mills, C.A.4, 1951, 190 F.2d 964; National Labor Relations Board v. Jas. H. Matthews & Co., C.A.3, 1946, 156 F.2d 706; National Labor Relations Board v. Mt. Clemens Pottery Company, C.A.6, 1945, 147 F.2d 262. Laguna gave every appearance of acting for management and his testimony that he was not was disbelieved by the trial examiner, just as he disbelieved Laguna's testimony with respect to the reasons for the discharge of Villasenor. We must assume that Laguna's testimony was completely discredited for the question of the credibility of witnesses is for the trial examiner. National Labor Relations Board v. State Center Warehouse and Cold Storage Co., 9 Cir., 193 F.2d 156; National Labor Relations Board v. West Coast Casket Co., 9 Cir., 205 F.2d 902.

The order is affirmed and will be enforced.