**NATIONAL LABOR RELATIONS BOARD, Plaintiff,**

v.

**WEST SIDE CARPET CLEANING CO., Respondent.**

**No. 15147.**

United States Court of Appeals
Sixth Circuit.

March 31, 1964.

&#8624;505

Leo N. McGuire, N. L. R. B., Washington, D. C., for petitioner, Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Pre-

vost, Asst. Gen. Counsel, Solomon I. Hirsh, Atty., N. L. R. B., Washington, D. C., on the brief.

Armond D. Arnson, Cleveland, Ohio, for respondent, Rocker, Kahn, Kleinman, Annan & Morton S. Zaller, Cleveland, Ohio, on the brief.

Before MILLER, CECIL, and O'SULLIVAN, Circuit Judges.

O'SULLIVAN, Circuit Judge.

National Labor Relations Board petitions for enforcement of its order finding respondent, West Side Carpet Cleaning Co., guilty of violations of Section 8(a) (1) and (3) of the National Labor Relations Act (Title 29, U.S.C.A. § 158(a) (1) and (3)). A complaint to the Board described acts of coercion, improper interrogation, promises of benefits, threats of reprisal, discriminatory discharge of an employee, and other like misconduct, all alleged to have been employed by respondent in resisting a union organization campaign. The customary cease and desist order with requirement to reinstate the discharged employee was entered.

Respondent challenges the Board's order on four grounds: (1) That the proofs failed to establish that its volume of interstate business was sufficient to confer jurisdiction; (2) that the Board's findings of fact were not supported by substantial evidence; (3) that the rules and regulations applied by the Board in this case violated due process, and (4) that respondent was denied a fair and impartial hearing because of alleged bias and prejudice on the part of the Trial Examiner, both in the general conduct of the hearing and in his rulings on admissibility of evidence.

1. *Jurisdiction.* To establish jurisdiction, the complaint adopted those standards which the Board has, as a matter of policy, employed in determining whether to take jurisdiction in a given case. It charged that respondent's direct and indirect inflow of interstate business exceeded the sum of $50,000.00. This is the monetary minimum which the Board

ordinarily uses to determine if it will exercise jurisdiction. The parties stipulated that respondent's direct inflow of interstate business was $17,628.45 for the calendar year of 1960, and $5,018.91 for the period from June 16, 1960 to June 15, 1961. Respondent's violations occurred primarily between the month of August and the end of the year 1960.

 The Trial Examiner, affirmed by the Board, found from the evidence that, in addition to the stipulated amounts, respondent's indirect inflow of such business [1] totaled $53,422.05 for the calendar year 1960, and $33,187.21 for the period from June 16, 1960 to June 15, 1961. Respondent here contends that the evidence from which said findings were made was erroneously admitted over its objections. The evidence so received consisted primarily of books and records of various business houses that did business with respondent. Identification of such records by employees of these concerns was attempted so as to qualify them for admission under the "shop book" rule, Title 28, U.S.C.A. § 1732(a). We are satisfied that, in many instances, the identification attempted was not sufficient to make the records admissible. Section 10(b) of the Act (Title 29, U.S.C.A. § 160(b)) requires that, so far as practicable, hearings before the Board should "be conducted in accordance with the rules of evidence applicable in the district courts of the United States." In our view, the "so far as practicable" qualification does not permit complete disregard of the rules of evidence. As this Court has said, § 1732 "was not intended * * * to open wide the door to any documents found among the papers and files of a corporation." N. L. R. B. v. Sharples Chemicals, Inc., 209 F.2d 645, 654 (CA 6, 1954). Were the erroneously admitted documents essential to the Board's case, we would hold that its jurisdiction had not been established. Respondent's brief does not, with specificity, set out the total dollar amount of indirect inflow asserted to have been established by inadmissible evidence. It contends that, in all events, the admissible evidence, plus the stipulated amount, fell short of proving the $50,000.00 minimum set by the Board's policy. Our own review of the evidence persuades us that properly admitted records and the stipulated amount brought the total of direct and indirect flow to a figure only slightly below the $50,000.00 Board policy minimum. We think this was sufficient. The Board did announce a policy, in Siemons Mailing Service, 122 NLRB 81, that it would not take jurisdiction over non-retail enterprises whose outflow-inflow of interstate transactions fell below the sum of $50,000.00. This policy, however, represented the Board's view of how it could best handle the administration of its responsibilities. While it might not be "cricket" for the Board to change its policy for a particular case, it is within its administrative discretion to do so. Lucas County Farm Bureau Cooperative Ass'n v. N. L. R. B., 289 F.2d 844, 845, 846 (CA 6, 1961); N. L. R. B. v. W. B. Jones Lumber Co., 245 F.2d 388, 390 (CA 9, 1957). Unless the maxim de minimis is applicable, the Board's jurisdiction is not dependent upon any particular volume of commerce. N. L. R. B. v. Denver Building and Construction Trades Council, 341 U.S. 675, 684, 71 S.Ct. 943, 95 L.Ed. 1284, 1293; Guss v. Utah Labor Board, 353 U.S. 1, 4, 77 S.Ct. 598, 1 L.Ed.2d 601, 604. See also N. L. R. B. v. Stoller, 207 F.2d 305 (CA 9, 1953); N. L. R. B. v. Aurora City Lines, Inc., 299 F.2d 229 (CA 7, 1962).

The Board had jurisdiction.

 2. *Substantial Evidence Supported the Finding of § 8(a) (1) and (3) Violations.* In August 1960 one of the AFL-CIO unions filed a petition to be certified as the bargaining agent for sixteen employees of respondent, West Side Carpet Cleaning Co., a Cleveland, Ohio concern. An organization campaign fol-

1. Direct inflow refers to direct purchases from and direct services to out-of-state concerns. Indirect inflow refers to purchases from and services to domestic companies which make purchases from out of the state.

lowed. The president of respondent, Donald A. Volk, resisted. His first reaction was, as expressed by him, "to fire them all." He implemented his resistance by interrogating various employees as to whether they had joined the union and tried to find out who were the union leaders. He learned that Frank Weber, his maintenance man, was active in the campaign. The usual intimations were made that his concern could not operate with a union and that the plant might have to close if the union succeeded. He referred to certain economic improvements he had in mind for his employees which would not be granted if the union gained control and threatened discharge of some men, specifically stating that he would have to let Weber go if the Union got in because he wouldn't then be able to pay him "that money." On October 31, 1960, he discharged Weber and some time thereafter stated, "I got rid of the ringleader." There was evidence of other like conduct. Respondent's witness denied some of the above described conduct answering that economic necessity required the discharge of Weber. The Board, however, resolved the factual issues against respondent's denials, concluding that Weber's discharge was discriminatory and the product of anti-union motivation.

It was the Board's prerogative to resolve the factual issues as it did. N. L. R. B. v. Bendix Corp., 299 F.2d 308, 310 (CA 6, 1962); N. L. R. B. v. Power Equip. Co., 313 F.2d 439 (CA 6, 1963); United Fire Works Mfg. Co. v. N. L. R. B., 252 F.2d 428, 430 (CA 6, 1958). Even though part of the motivation for Weber's discharge might have been a needed cutting of expenses, such circumstance could not be legally used to effectuate a companion motive to rid the company of a union protagonist. N. L. R. B. v. Coats and Clark, Inc., 231 F.2d 567 (CA 5, 1956); N. L. R. B. v. Murray Ohio Mfg. Co., 326 F.2d 509, 517 (CA 6, 1964). The Board inferred that an economic reason for taking Weber off of its payroll was seized upon by respondent to serve a discriminatory purpose. This

was permissible under the evidence. N. L. R. B. v. Link-Belt Co., 311 U.S. 584, 596, 597, 61 S.Ct. 358, 85 L.Ed. 368, 378; N. L. R. B. v. Wiltse, 188 F.2d 917, 925 (CA 6, 1951); N. L. R. B. v. Ford, 170 F.2d 735, 739 (CA 6, 1948); N. L. R. B. v. Murray Ohio Mfg. Co., supra.

We are satisfied that the Board's findings of fact, in the above regard, are supported by substantial evidence on the record considered as a whole. Such view precludes further consideration by us. Title 29, U.S.C.A. § 160(e); Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

We find no merit in respondent's contention that the National Labor Relations Act and its rules and regulations, as applied in this case, denied respondent due process of law. Neither do we find that respondent was deprived of a fair and impartial hearing by the Trial Examiner whose report was affirmed by the Board.

We decree enforcement of the Board's order.