**LOZANO ENTERPRISES, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 20069.

United States Court of Appeals
Ninth Circuit.
March 3, 1966.

Sheppard, Mullin, Richter & Hampton, Frank Simpson, III, Los Angeles, Cal., for petitioner.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel,

Marcel Mallet-Prevost, Asst. Gen. Counsel, Warren M. Davison, Michael N. Sohn, Attys., N. L. R. B., Washington, D. C., for respondent.

Before BARNES and ELY, Circuit Judges, and CURTIS, District Judge.

CURTIS, District Judge:

We have before us a petition to set aside the decision and order of the NLRB requiring the petitioner, Lozano Enterprises, to reinstate Jose Martinez, laid off allegedly on account of union membership, in violation of § 8(a) (1) and § 8 (a) (3) of the National Labor Relations Act.

Lozano Enterprises, a California corporation, publishes and distributes in the Los Angeles area a Spanish language newspaper. In NLRB v. Lozano Enterprises, 9 Cir., 318 F.2d 41, this court ordered Lozano to reinstate one Jose Nabor Villasenor as a night shift linotype operator whom the NLRB found had been wrongfully discharged. In order to make room for the reinstatement of Villasenor, Lozano laid off Jose Martinez, one of four such linotype operators and the most junior in the plant except one Barunda, who was in fact the most junior of all and who was retained. Martinez was a dues paying member of the union, whereas Barunda was not.

A complaint was filed with the NLRB charging Lozano with violation of § 8(a) (1), § 8(a) (3) and § 8(a) (4) NLRA. After a hearing, the Board found no violation of § 8(a) (4) but did find that in violation of § 8(a) (1) and § 8(a) (3) Lozano had discriminated against Martinez because of union membership.

■ The question for us is whether or not the findings of the Board are supported by substantial evidence on the record when considered as a whole. If so, they are conclusive upon us. Title 29 U.S.C. § 160(e). If not, it is our duty to set aside and refuse enforcement of the order of the Board. NLRB v. Florida Steel Corp., 308 F.2d 931 (5th Cir. 1962), Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

After careful review of the evidence in the record, we find that there is no substantial evidence, considering the record as a whole, to support the Board's conclusion.

Ignacio Lozano, the president of the respondent and publisher of the newspaper, testified as did Andres Laguna, the night foreman, and the Board found that as between Martinez and Barunda, Martinez was the employee with the most instances of objectional conduct to his credit. The examiner also found that the testimony of Martinez in denying or explaining these instances of alleged misconduct was not credible. Ignacio Lozano and Laguna gave as their reasons for selecting Martinez for layoff simply that in view of his past misconduct they concluded that Barunda would make a more reliable and better employee of the two, especially since the position under consideration would require much unsupervised work.

In concluding that Martinez was terminated because of his union membership, the Board relied upon several considerations, which we shall enumerate and discuss in turn.

1. Martinez, a dues paying member, was laid off while Barunda, a non-union member was retained.

■■ If unlawful discrimination can be inferred from mere union membership or activity, followed by discharge, that inference disappears when a reasonable explanation is presented to show that the employee was not discharged for union membership. NLRB v. United Brass Works, (4th Cir. 1961) 287 F.2d 689; NLRB v. Stafford, (8th Cir. 1953) 206 F.2d 19; Ohio Associated Telephone Company v. NLRB, 192 F.2d 664 (6th Cir. 1951). Furthermore, an employer's oath that the discharged employee's membership or activity in a union was not the ground for his discharge cannot be disregarded because of a suspicion that he may have lied. There must be impeachment of him or substantial contradiction, or if circumstances raise doubts, they must be inconsistent with the positive sworn evidence on the exact point. NLRB v. Stafford, supra.

2. Martinez was senior to Barunda and Lozano gave great significance to seniority in its determination to retain Duenas, one of the other employees considered for layoff.

The Board apparently drew the inference that because Lozano relied upon seniority in its decision to retain Duenas, the abandonment of seniority as a criterion in its decision to lay off Martinez gave rise to some unlawful motive. No such inference can be drawn. The most that can be said of this evidence is that it may cause some suspicion of unlawful motives, but circumstances that merely raise a suspicion that the employer may be activated by unlawful motives in discharging an employee are not sufficiently substantial to support a finding of unlawful labor practices. NLRB v. Citizen-News Company, (9th Cir. 1943) 134 F.2d 970, 971.

3. Lozano did not consider Martinez' misconduct of such serious magnitude as to warrant his discharge. In fact, he was thereafter advanced in his employment in spite of his misconduct. These facts are not inconsistent with Lozano's stated reasons. Misconduct of any degree is a logical and proper consideration in determining which of two employees is the more reliable and desirable.

4. The Board found that over a period of several years Laguna, without making any threats or promises, solicited Martinez to abandon the union. But it is well settled that an employer is not required to favor a union or refrain from opposing it, nor is it prohibited from expressing opposition to it. NLRB v. Threads, Inc. (4th Cir. 1962) 308 F.2d 1.

5. The examiner found that Duenas would have been the most logical choice for termination.

The language of the court in NLRB v. McGahey, (5th Cir., 1956) 233 F.2d 406, 412, is particularly apropos:

"The Board's error is the frequent one in which the existence of the reasons stated by the employer as the basis for the discharge is evaluated in terms of its reasonableness. If the discharge was excessively harsh, if lesser forms of discipline would have been adequate, if the discharged employee was more, or just as, capable as the one left to do the job, or the like then, the argument runs, the employer must not actually have been motivated by managerial considerations, and (here a full 180 degree swing is made) the stated reason thus dissipated as pretense, nought remains but antiunion purpose as the explanation. But as we have so often said: management is for management. Neither Board nor Court can second-guess it or give it gentle guidance by over-the-shoulder supervision. Management can discharge for good cause, or bad cause, or no cause at all. It has, as the master of its own business affairs, complete freedom with but one specific, definite qualification: it may not discharge when the real motivating purpose is to do that which Section 8(a) (3) forbids. N. L. R. B. v. Nabors, supra [5 Cir., 196 F.2d 272]; N. L. R. B. v. National Paper Co., supra [5 Cir., 216 F.2d 859]; N. L. R. B. v. Blue Bell, Inc., supra [5 Cir., 219 F.2d 796]; N. L. R. B. v. C. & J. Camp, Inc., supra [5 Cir., 216 F.2d 113].

\* \* \* \* \* \*

" * * * With discharge of employees a normal, lawful legitimate exercise of the prerogative of free management in a free society, the fact of discharge creates no presumption, nor does it furnish the inference that an illegal— not a proper—motive was its cause. An unlawful purpose is not lightly to be inferred. In the choice between lawful and unlawful motives, the record taken as a whole must present a substantial basis of believable evidence pointing toward the unlawful one."

General counsel had the burden of proof of establishing before the Board that the layoff of Martinez was in violation of the Act. We hold that upon the record taken as a whole there is no

substantial evidence to sustain this burden of proof.

The petition to set aside the decision and order of the National Labor Relations Board is granted.