NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

STEMUN MANUFACTURING COM-
PANY, Inc., Respondent.

No. 19438.

United States Court of Appeals,
Sixth Circuit.

April 2, 1970.

738

Janet C. McCaa, N. L. R. B., Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Warren M. Davison, N.L.R.B., Washington, D. C., on brief.

Roy E. Browne, Akron, Ohio, for respondent, Hershey, Browne, Wilson, Steel, Cook & Wolfe, Akron, Ohio, on brief; Roy E. Browne, Akron, Ohio, of counsel.

Before WEICK and CELEBREZZE, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

CELEBREZZE, Circuit Judge.

This is a petition for enforcement of a National Labor Relations Board (hereinafter the "Board") order requiring Stemun Manufacturing Company (hereinafter the Company) to cease and desist from certain unfair labor practices, and reinstate with back pay four discharged employees. The order reaffirms the Board's original order which this Court remanded for the taking of additional evidence as to the genuineness of a document allegedly written before union activity began. N. L. R. B. v. Stemun Manufacturing Company, 386 F.2d 174 (6th Cir. 1968).

The facts of this case are fully set out by the Board at 153 NLRB No. 102 (1965) and 174 NLRB No. 50 (1968). In short, the Board found that the Company engaged in conduct which violated Section 8(a) (1) and (3) of the Act during a union organizational campaign which began in April, 1964, as a result of a Company program to discharge economically inefficient workers. The Company denies it has violated the Act and relies chiefly on the disputed document as evidence that it discharged its employees solely for lawful reasons.

The issues before this Court are: First, whether there is substantial evidence to support the Board's finding as to the fraudulent creation of the document. Second, whether there is nevertheless substantial evidence of Company violations of employee rights protected under §§ 8(a) (1) and 8(a) (3) of the Act.

The Genuineness of The Document.

The Board specifically found that the document was fraudulently prepared after union activity was commenced with the intent of deceiving the Board into believing that the discharges of four employees were based on lawful economic motives.

The Taft-Hartley Act, 29 U.S.C. § 160 (e) (1964) requires us to affirm such a factual finding of the Board if it is corroborated by "substantial evidence" when viewing the "record considered as a whole." In Universal Camera Corporation v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), the "relation between the Board and the Court of Appeals" with regard to factual findings supporting a petition for enforcement of a Board order was set out with particularity. We were instructed to set aside those judgments in which we "cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view." 340 U.S. at 476, 488, 71 S.Ct. at 458, 465.

The Board has relied on several circumstantial factors which it contends taken as a whole validate its finding that the challenged memorandum was not genuine. First, the Company did not produce the document in the eight months of pre-hearing discussions with the Board's representatives, although it would have clearly been relevant. Second, neither the President nor Super-

intendent mentioned the document in their affidavits prior to the hearing with the Trial Examiner. Third, Attorney Vaughn did not mention the memorandum in responding to a Board inquiry prior to the hearing as to the discharges of certain employees. Fourth, the Company did not call Mrs. Nelson, the Secretary who purportedly typed the memorandum. Fifth, Superintendent Kindell allegedly hesitated before answering an inquiry as to the identity of the person who typed the memorandum, although such hesitation was not recorded on the hearing transcript. Sixth, certain of the employees' names on the memorandum were misspelled, raising an inference of unfamiliarity with the employees. Seventh, President Muncy had a hostile attitude and otherwise poor memory at the hearings conducted by the Trial Examiner. In no instance does the Board produce affirmative evidence from any of the principals involved to substantiate its finding of fraud. The Board does not explain why it, like the Company, did not produce the testimony of Mrs. Nelson, who purportedly was present at the time the document was dictated.

In addition to these factors, a review of the record reveals a significant discrepancy between the uncontested fact that an employee, Junior Skaggs, was discharged on April 1, 1964 and the challenged document allegedly written on April 15, 1964, which "recommended strongly * * * (to Mr. Muncy that he) * * * dismiss Junior Skaggs." This discrepancy is additional circumstantial evidence suggesting that the challenged memorandum may not have been authored on April 15th, before union activity had begun; but that the document may have been authored at a much later date after union activity had begun when memories of the exact dates were less clear. We place little reliance on this discrepancy because the Board—whose findings it favors—did not consider it sufficiently important to rely on it in either its opinion or on appeal.

On the other hand, the Company relies on direct affirmative testimony under oath by two of its agents as to the genuineness of the memorandum: President Muncy and Superintendent Kindell. Further, those principals stated facts to the Board's agents entirely consistent with the memorandum when filing affidavits with the Board in the initial stages of investigation of the alleged discriminatory discharges. In addition, the Company argues that it is good law practice to hold back written corroborative evidence for trial unless specifically requested in pre-hearing stages. Finally, labor relations consultant, Rector, who worked with the Company, testified under oath that he found the disputed memorandum in the Company or its lawyer's files in September, 1964, five months before the hearing at which the Board found that the memorandum was fraudulently prepared.

■ We are charged by statute and case law to uphold factual findings of the Board when we find substantial evidence in the record viewed as a whole. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 1 S.Ct. 456, 95 L.Ed. 456 (1951). The instant case requires us to review a factual finding of the Board based on several indirect and circumstantial factors which are controverted by the direct sworn testimony of three principals in this action. In reviewing the Board's factual determination, we are not unmindful of its "special province" of determining the issue of credibility of witnesses. Champion Papers, Inc. v. N. L. R. B., 393 F.2d 388 (6th Cir. 1968); Keener Rubber, Inc. v. N. L. R. B., 326 F.2d 968 (6th Cir. 1964) cert. denied 377 U.S. 934, 84 S.Ct. 1337, 12 L.Ed.2d 297; N. L. R. B. v. Bendix Corp., 299 F.2d 308, 310 (6th Cir. 1962) cert. denied 371 U.S. 827, 83 S.Ct. 47, 9 L.Ed.2d 65.

■ Considering the entire record as a whole, we do not believe that the Board may discredit all of the testimony of three principals under oath on the basis of entirely indirect and circumstantial evidence. Had the Board relied on any significant internal inconsistencies of the principals, on the testimony of Mrs.

Nelson, who purportedly typed the document, or any such direct evidence, we would be disposed to yield to their expertise in crediting individual testimony. We believe that the direct evidence as to genuineness is so substantial, that we cannot "conscientiously" uphold a finding that the disputed memorandum was fraudulently prepared. *Universal Camera Corp.*, supra, 340 U.S. at 488, 71 S.Ct. 456, 95 L.Ed. 456.

Substantial Evidence of a § 8(a) (1) Violation.

■ An employer is prohibited from interfering with, restraining or coercing his employees who have engaged in union organizational activities protected by § 7 of the National Labor Relations Act. 29 U.S.C. § 158. A finding by the Board that an employer has, in fact, engaged in such conduct will be upheld where it is supported by substantial evidence. Universal Camera Corp. v. N. L. R. B., supra, and 61 Stat. 148, 29 U.S.C. § 160(e) (1964).

On the basis of credited evidence, the Board found the Company engaged in the following conduct proscribed by § 8(a) (1) of the National Labor Relations Act:

The Company's President Muncy and Plant Superintendent Kindell interrogated two employees about union activity at the Company on May 2nd and 4th. Surprenant Manufacturing Co. v. N. L. R. B., 341 F.2d 756, 762–763 (6th Cir. 1965) (coercive interrogation). Messrs. Muncy and Kindell threatened reprisal for union activity, such as: a "big shock" would be in store for certain employees concerned with the union; management "could and would" job the work out or management would "close the doors" if the union would not take the contract presented to it. Surprenant Manufacturing Company v. N. L. R. B., 341 F.2d 760–761 (threats of reprisals for union activity). Further, employee Gregory was solicited to "keep his eyes and ears open" and re-

port back to management about the union activity of his co-workers. Pulley v. N. L. R. B., 395 F.2d 870, 874 (6th Cir. 1968) (soliciting of an employee to engage in surveillance of union activities). In addition, President Muncy solicited and aided employee Gregory and Foreman Murphy in procuring from employees statements withdrawing unfair labor practice charges. N. L. R. B. v. Elias Brothers Big Boy, Inc., 327 F.2d 421 (6th Cir. 1964) (soliciting and aiding in withdrawal of unfair labor practice charges and statements given to Board). Finally, employee Gregory was authorized by management to promise benefits to induce certain employees to withdraw their charges against the Company. N. L. R. B. v. Elias Brothers Big Boy, Inc., 327 F.2d at 422–423 (promises of benefits for not participating in union activity).

■ The numerous instances cited above are each sufficient credited evidence to affirm the Board's findings with regard to violations of § 8(a) (1) of the Act. N. L. R. B. v. Boot-Ster Manufacturing Company, 405 F.2d 1210 (6th Cir. 1968). The genuineness of the challenged memorandum played no part in the Board's determination that each of the aforementioned incidents comprised a § 8(a) (1) violation.

Substantial Evidence of a § 8(a) (3) Violation.

■ An employer is prohibited from discriminating in the discharging of employees "to encourage or discourage membership in any labor organization." Sec. 8(a) (3) National Labor Relations Act, 29 U.S.C. § 158. A factual finding by the Board that an employer has discharged an employee because of his union activities will be upheld where it is supported by substantial evidence. Universal Camera Corp. v. N. L. R. B., supra, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; 29 U.S.C. § 160. No particular employer intent "to encourage or discourage" union membership need be

shown, although its presence in conjunction with discharges of employees engaged in union activities will be evidence of a violation of § 8(a) (3) of the Act.

The Board has found that employees Giles, Christian, Capper and Stevens were each discharged in a response by management to their union organizational efforts, so as to discourage further union activity on the part of the Company's employees. Each of these employees' status was considered on the memorandum which the Board contended was fraudulently prepared, but that we hold today must be considered as genuine, viewing the record as a whole.

The Board credited testimony that on May 2nd, after coercive interrogations of certain employees, Superintendent Kindell predicted that on Monday, May 4th, Giles, Christian and others suspected of union activity would have "a big shock in store for them." On Monday, Giles and Christian were fired along with Stevens[1] and Capper.[2] Subsequent to these discharges, President Muncy commented that, "if there is (sic) any more people around here who don't like the way things are run, they can get out."

These statements are substantial evidence that the management harbored anti-union animus at the time of the discharges. Further, the timing of the discharges with the union's bid for recognition on May 1, 1964 and the prediction of a "big shock" on Monday are substantial evidence that the discharges were in violation of § 8(a) (3). N. L. R. B. v. Iron City Sash & Door Co. of Johnstown, 352 F.2d 437, 438 (6th Cir. 1965); N. L. R. B. v. Piezo Manufacturing Corporation, 290 F.2d 455, 456 (6th Cir. 1961).

The Company contends that the discharges were for lawful economic motives as evidenced by the disputed memorandum which we have found to be genuine. That memorandum, however, does not provide a complete defense to the Board's charges that in addition to any economic motivations, the actual impelling motive of the discharges was as a response to union activity. The memorandum does not indicate that the four dischargees who are the subject of the Board's order were all to be discharged by May 1, 1964. Indeed, the memorandum provides as follows:

"Dismiss Mike Giles, Plant 2, by May 1, 1964, unless he shows an improvement

\* \* \* \* \* \*

Dismiss Dennis Christian unless he shows a definite improvement in his performance

\* \* \* \* \* \*

Dismiss Fairy Capper (sic) unless he shows a great improvement in his work efforts

\* \* \* \* \* \*

Dismiss Donald Stevens if he does not improve his work efforts and absentism (sic)."

While the memorandum provides an economic basis of discharge for each of the four workers who were in fact dismissed during the first week of May, on its face—only employee Mike Giles' dismissal was contemplated during the time period in question: "Dismiss Mike Giles \* \* \* by May 1, 1964". The timing of the dismissals of the other three workers—Christian, Capper and Stevens—was contingent on their future performance. There is no indication that such firings were to have taken place at the same time as the dismissal of Mike Giles. Indeed, the inference of the memorandum is to the contrary.

Since the dismissal of these three workers was not mandated by the memorandum, we must look to all the circumstances surrounding their discharges to determine if their dismissals in the first week in May was a response to their union activities, rather than to

---

1. Stevens was generally known to have been quite active in an abortive organizational campaign some months earlier.

2. Capper had signed a union authorization card on April 21, 1964.

their allegedly poor economic perform-ances. In so doing, we cannot ignore the precipitous nature of the discharges and the accompanying threats, inter-rogations and promises of benefits to discourage union activity by the Com-pany. The timing of the discharges at the inception of the union activity and concomitant with the Company's § 8(a) (1) violations is more than mere "coin-cidence." N. L. R. B. v. Jamestown Sterling Corp., 211 F.2d 725 (2d Cir. 1954). It is indicative of an unlawful response to union activity. N. L. R. B. v. Iron City Sash & Door Company, su-pra, 352 F.2d 437; N. L. R. B. v. West Side Carpet Cleaning Co., 329 F.2d 758 (6th Cir. 1964).

We conclude that there is substantial evidence in the record to support the Board's findings of violations of § 8(a) (1). And that further, there is sub-stantial evidence in the record to sup-port the Board's findings of violations of § 8(a) (3) with regard to Employees Christian, Capper and Stevens. We be-lieve, however, that there is not substan-tial evidence that the disputed memo-randum was fraudulently prepared to de-ceive the Board. Accordingly, that memorandum's declaration that Em-ployee Giles will be dismissed by May 1, 1964 for economic reasons should be considered as genuine. Hence, we can-not say there is substantial evidence Em-ployee Giles was discharged for his union activities in violation of § 8(a) (3). He shall not be entitled to rein-statement and back pay. In all other re-spects, the findings of the National La-bor Relations Board are affirmed and its petition for enforcement is hereby granted.

WEICK, Circuit Judge (dissenting in part).

I would not enforce any part of the Board's order with respect to the al-leged Section 8(a) (3) violations. Con-sidering the record as a whole, the order is not supported by substantial evidence.