NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

Newton JOSEPH, d/b/a Meat Packers
International, Respondent.

Newton JOSEPH, d/b/a Meat Packers
International, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

Nos. 77–3521, 77–3734.

United States Court of Appeals,
Ninth Circuit.

Oct. 1, 1979.

Ellen P. Spangler, N. L. R. B., Washington, D. C., Patrick J. Szymanski, Washington, D. C., for N. L. R. B.

David S. Bradshaw, Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., for Joseph.

Before KILKENNY and TRASK, Circuit Judges, and NIELSEN,* District Judge.

TRASK, Circuit Judge:

This is a petition for enforcement of an order by the National Labor Relations Board (Board) requiring the reinstatement of a worker that the Board found was dismissed discriminatorily. The company cross-petitions to have the order set aside. Jurisdiction of this court is based upon section 10(e) and (f) of the National Labor Relations Act, 29 U.S.C. § 160(e) and (f). Both the petition for enforcement (No. 77–3521) and the cross-petition to have the order set aside (No. 77–3734) were consolidated for oral argument.

Newton Joseph, doing business as Meat Packers International (Respondent and Cross-Petitioner), was at all times herein a sole proprietorship engaged in the retail sale of meats in Pacoima, California. On September 22, 1975, Nicolas Castro (Castro), filed a charge against Respondent alleging that Respondent had engaged in unfair labor practices within the meaning of section 8(a)(1) and (4) of the National Labor Relations Act (Act), 29 U.S.C. § 158(a)(1) and (4). The particular unfair labor practice charged was the discharge of Castro. Respondent filed a general denial. A trial was

* Honorable Leland C. Nielsen, United States District Judge for the Southern District of California, sitting by designation.

held before Roger B. Holmes, an Administrative Law Judge (ALJ), on February 4, 1976, at Los Angeles.

The principal issue in the proceeding before Judge Holmes was whether Respondent violated section 8(a)(4) of the Act, 29 U.S.C. § 158(a)(4) by improperly discharging Castro and failing to reinstate him because of Castro's earlier union activity and because Castro had previously given testimony in a prior Board proceeding against the Respondent. The ALJ in that prior proceeding, Judge Rasbury, found on the basis of the credited testimony in the prior proceeding, that there were twelve discriminatory discharges. Those employees were discharged because of alleged union activity. Judge Rasbury ordered that the employees who suffered those discharges must be reemployed. When it became time to reemploy those workmen, decisions had to be made as to which present employees must be discharged in order to create vacancies for reemployment in compliance with the order of ALJ Rasbury. After some study, the decision of management was that Castro would be the first to be discharged to make room for reemployment of a discriminatorily discharged employee.

ALJ Holmes, in the second proceeding, found that assuming *arguendo* that the Board would sustain the unfair labor practice findings in the prior case, those findings would not necessarily compel a finding of an unfair labor practice in the present case. In addition, Judge Holmes found, on the basis of the credited testimony, that Respondent's desire to minimize its potential backpay liability was the motivating factor leading to the termination of Castro. He did not find improper union animus.

Finally, there arose the question as to why Respondent did not subsequently rehire Castro when vacancies later occurred. The answer according to ALJ Holmes is that the credited evidence is that Castro did not want to work for the Respondent because he had a job somewhere else, and did not choose to accept an offer of employment with Respondent.

On the basis of the credited testimony presented to ALJ Holmes, he concluded that the Respondent did not engage in an unfair labor practice as alleged in that proceeding. He ordered "that the complaint in that proceeding be dismissed in its entirety." 230 NLRB No. 13, June 16, 1977 at 233. The Board reversed ALJ Holmes in finding an unfair labor practice and ordered the reinstatement of Castro.

With respect to credibility findings, ALJ Holmes commented that he credited the testimony of all of Respondent's witnesses to wit: Henry Becker, Respondent's labor relations consultant; Ms. Goldberg, bookkeeper and supervisor; Keith Knutson, general manager.[1]

The hearing in that prior proceeding before ALJ Rasbury was held in April 1975. The charging party in this case, Castro, testified in that earlier hearing. Judicial notice was taken of that earlier proceeding under the rule that the Board may take judicial notice of its own proceedings. For credibility and demeanor purposes however, those witnesses were record witnesses and not live witnesses. Their testimony comes to us only upon the written record made of the testimony in the earlier proceeding which was filed by one Vincent Salazar.

---

1. "The foregoing statement of facts in this section is based upon the uncontradicted testimony of Henry Becker. While I am cognizant of the fact that Becker is Respondent's labor relations consultant and represented Respondent in the earlier case, I find no basis for questioning his veracity. I have credited his testimony throughout this proceeding.

"I also find credible the testimony given by Ms. Goldberg, Knutson, and Joseph Yglesiao. In the sections which follow, I have based the statement of facts upon their credited testimony. As will be seen, there are some conflicts between the testimony which was given by them and that given by Castro. I am not unmindful of the credibility resolutions made by the Administrative Law Judge in the prior proceeding. Nevertheless, Castro's demeanor in this later proceeding, where he was testifying under different circumstances concerning his own discharge, did not persuade me that the versions which he gave of the conversations were true. I found the other four witnesses to be more reliable and accurate." 230 NLRB No. 13, June 16, 1977 at 228 n. 3.

225 NLRB No. 51 at 296. The hearings in the Salazar proceeding were held at various dates beginning April 1, 1975, before ALJ Rasbury, and his decision was rendered on August 6, 1975.

The proceeding we are principally concerned with was instituted by Nicolas Castro on September 22, 1975, and the hearings were held before ALJ Holmes on February 4, 1976. His complaint was that he was discharged in violation of the National Labor Relations Act because his discharge was prompted by union activity.

The record testimony, however, is that Castro was discharged to make a place for a fellow worker, Ortiz, whom the NLRB examiner in the Salazar proceeding had ordered to be reinstated. Castro was selected because he was the least competent of the workers available. That was a selection that management was entitled to make. *Lozano Enterprises v. NLRB,* 357 F.2d 500, 502 (9th Cir. 1966). This court there adopted some of the language of the court in *NLRB v. McGahey,* 233 F.2d 406, 412 (5th Cir. 1956), saying:

"The language of the court in *NLRB v. McGahey,* (5th Cir., 1956) 233 F.2d 406, 412, is particularly apropos:

'The Board's error is the frequent one in which the existence of the reasons stated by the employer as the basis for the discharge is evaluated in terms of its reasonableness. If the discharge was excessively harsh, if lesser forms of discipline would have been adequate, if the discharged employee was more, or just as, capable as the one left to do the job, or the like then, the argument runs, the employer must not actually have been motivated by managerial considerations, and (here a full 180 degree swing is made) the stated reason thus dissipated as pretense, nought remains but antiunion purpose as the explanation. But as we have so often said: management is for management. Neither Board nor Court can second-guess it or give it gentle guidance by over-the-shoulder supervision. Management can discharge for good cause, or bad cause, or no cause at all. It has, as the master of its own business affairs, complete freedom with but one specific, definite qualification: it may not discharge when the real motivating purpose is to do that which Section 8(a)(3) forbids.' "

357 F.2d at 503.

Here, Respondent's top management gave careful consideration to the one who must be discharged to comply with the ALJ's order and it was Castro's name which was selected, not as a matter of chance or prejudice, but as a carefully made management selection.

The Supreme Court has stated the matter thusly in *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951):

"Congress has merely made it clear that a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view."

Here we cannot look at the entire record including the demeanor findings in the proceeding before us, namely the Castro decision, and conscientiously find that there is substantial evidence, under *Universal Camera Corp.,* supporting the Board's finding that there was an unfair labor practice. Consequently, the decision of the National Labor Relations Board is set aside and enforcement is refused.