Elizabeth C. SMITH, Plaintiff
and Appellant,

v.

STATE of North Dakota, d/b/a
University of North Dakota,
Defendant and Appellee.

Civ. No. 11118.

Supreme Court of North Dakota.

June 26, 1986.

Chapman & Chapman, Bismarck, for plaintiff and appellant; argued by Daniel J. Chapman.

McConn, Fisher & Thune, Grand Forks, for defendant and appellee; argued by Gary R. Thune.

LEVINE, Justice.

Elizabeth Smith appeals from a judgment dismissing on the merits her action for reinstatement of employment as a professor at the University of North Dakota (the University). We affirm.

Smith was hired as a professor in the Department of Sociology at the University for the 1982–83 school year. Smith received a second-year contract for the 1983–84 school year, but she received a nonrenewal notice from the University President on December 13, 1983, terminating her employment with the University at the conclusion of her second year. Smith was hired in a tenure track position, but at the time of her nonrenewal she was in a probationary nontenure status.

Smith filed this action alleging that her nonrenewal constituted a breach of her contractual rights, because the University did not comply with the procedures for nonrenewal as set forth in the Faculty Handbook and did not comply with the written evaluation procedures of the Sociology Department. The district court, concluding that the University substantially complied with the evaluation and nonrenewal procedures, determined that Smith's contract rights had not been violated and dismissed her action with prejudice. In essence, Smith has raised the following issues on appeal:

(1) Whether Smith's contractual rights were violated by the University's failure to comply with its evaluation and nonrenewal procedures;

(2) Whether the trial court erred in denying Smith's request to take pretrial discovery depositions of the members of the University Standing Committee on Faculty Rights; and

(3) Whether the trial court erred in concluding that the University nonrenewal procedures did not entitle Smith to a transcript of the deliberations of the Standing Committee on Faculty Rights.

Smith asserts that the University violated her contract by failing to comply

with the nonrenewal procedures in the Faculty Handbook and with the evaluation procedures as set forth in the written guidelines of the Sociology Department. In *Stensrud v. Mayville State College*, 368 N.W.2d 519, 522 (N.D.1985), we stated that "substantial compliance with the procedural requirements for termination is sufficient if their purpose is fulfilled," and we endorsed the following rationale of the Utah Supreme Court in *Piacitelli v. Southern Utah State College*, 636 P.2d 1063, 1067 (Utah 1981):

> " 'While exact conformance with the precise terms of the termination procedures is doubtless the least controversial course, so long as the substantial interests those procedures are designed to safeguard are in fact satisfied and protected, failure to conform to every technical detail of the termination procedure is not actionable.' "

Although the interpretation of regulations to ascertain their purpose is a question of law, the determination of whether conduct is in substantial compliance with the regulations is a question of fact. *Stensrud, supra*, 368 N.W.2d at 523.

Pursuant to the Sociology Department's written evaluation procedures, first-year nontenured faculty members are to be evaluated "at the end of the first semester of their first year" and again "at the end of their first year." Smith was evaluated by the Sociology Department Faculty Evaluation Committee during November 1982 of her first semester. Smith was again evaluated by the Committee in February 1983. Smith asserts that the second evaluation violated departmental procedures because it occurred several months before the end of the second semester. She asserts that she was thereby prejudiced because a later evaluation could have provided a more adequate notification of inadequacies in her job performance which she could have then attempted to correct.

The trial court found that the timing of the evaluations was conducted in substantial compliance with the Department's regulations and fulfilled the purpose of those regulations. The second evaluation identified areas of concern with regard to Smith's job performance, including mode of instruction, student retention, and course materials selection. As found by the trial court, the practical effect of giving Smith an early second evaluation "was to allow her additional time within which to correct those deficiencies." Smith was also given a third evaluation in November 1983, during the first semester of her second year. That evaluation stated that the concerns raised during the second evaluation had not been eliminated and that there continued to be problems with student retention, ineffective communication, and student dissatisfaction with course materials.

■ The obvious purpose of the evaluation procedure is to inform the faculty employee of her job performance and to provide the University with information relevant to deciding whether to retain or to nonrenew the employee. In reviewing the record, we have been unable to find any credible evidence that Smith was not apprised of her job performance because of the timing of the evaluations. Accordingly, we conclude that the trial court's finding that the second evaluation was in substantial compliance with and fulfilled the purposes of the evaluation procedures is not clearly erroneous.

Smith asserts that the Evaluation Committee did not utilize a fair and impartial cross section of student opinion in evaluating her. The Sociology Department evaluation procedures state that in gaining information about the quality of teaching by a faculty member the Committee "shall make sure that a cross section of student opinion is taken into account." The Committee considered the written evaluations completed by Smith's undergraduate students in all classes except one in which Smith inadvertently failed to administer the evaluations as scheduled. Ultimately, each student in that class was given an opportunity to complete an evaluation, but only after a personal consultation with Smith regarding the take-home final examination. The Evaluation Committee indicated that it

gave less weight to those evaluations as a result of the circumstances under which they were completed. In addition to the undergraduate student evaluations, the Committee considered the opinions of 11 of the 12 graduate students in the Sociology Department.

The trial court found that there had been substantial compliance with the requirement that the Committee consider a cross section of student opinion in its evaluation process. Based upon our review of the record, we conclude that the trial court's finding in that regard is not clearly erroneous.

Smith also asserts that there were numerous other violations of the evaluation and nonrenewal procedures which collectively constituted a breach of her contractual nonrenewal rights. The alleged violations include a failure to rank or weigh the importance of the various criteria to be considered in the evaluation process; a failure to provide an adequate "peer judgment" review; a failure to provide clear departmental goals or policies by which to evaluate a faculty member's job performance; a failure to provide fair and objective evaluation of the relevant criteria; and a failure to establish procedures so that performance may be "equitably assessed and documented."

The initial recommendation to nonrenew Smith's contract was made by the Sociology Department Review Committee. That recommendation was reviewed by a Special Review Committee of the University and by the University President who made the final decision to nonrenew Smith's contract. Thereafter, the decision was reviewed by the Standing Committee on Faculty Rights which, on a split vote, confirmed the nonrenewal decision. That Committee conducted an extensive hearing as evidenced by more than 900 pages of transcript culminating with a written recommendation by the Committee to the University President favoring the initial nonrenewal decision.

We can sympathize with Smith's position. During the review process she introduced substantial testimony and other evidence to demonstrate her teaching ability and other job skills. Smith might well have the attributes of a competent and perhaps outstanding faculty member, and there may have been an error in judgment in terminating her contract. However, it is not the function of this Court to substitute its judgment for that of the University in making a nonrenewal decision.

The trial court concluded that the process utilized by the University in nonrenewing Smith's contract did comply with the requirements for nonrenewing a nontenured faculty member as set forth by the Faculty Manual and the Sociology Department guidelines. Having reviewed the entire record in this case, focusing particularly upon those facets of the evaluation and nonrenewal process about which Smith raised objection, we conclude that the trial court's finding is not clearly erroneous. Consequently, Smith's nonrenewal by the University did not constitute a breach of contract.

Smith asserts that the trial court erred in granting the University's motion for a protective order precluding Smith from deposing the members of the Standing Committee on Faculty Rights. Smith asserts that she was thereby deprived of discovery through which she could determine "... if the action of the committee was arbitrary or capricious."

Under Rule 26(c), N.D.R.Civ.P., the trial court may issue a protective order prohibiting discovery by deposition "for good cause shown" when "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, ..." The trial court's decision to grant or deny such a protective order will not be set aside on appeal unless it constitutes an abuse of discretion. *See Burke v. Angies, Inc.,* 143 Mich.App. 683, 373 N.W.2d 187 (1985); *Hulse v. Schelkopf,* 220 Neb. 617, 371 N.W.2d 673 (1985); *State v. Beloit Concrete Stone Co.,* 103 Wis.2d 506, 309 N.W.2d 28 (1981).

The University advanced two reasons for precluding Smith from deposing the individual committee members: (1) that there was no showing or allegation by Smith of bad faith or other improper behavior by any committee member; and (2) that the contemplated depositions would constitute "fishing expeditions" to find wrongdoing by committee members which would have a "chilling effect" on the committee's ability to perform its function as an advisory body to the University's President. The trial court, agreeing with the University's reasoning, determined that it had shown good cause for issuing the protective order.

The Committee submitted its findings and recommendation to the University President through a memorandum following an extensive hearing on Smith's nonrenewal. Its deliberations were open with Smith in attendance. There has been no allegation by Smith of fraud, bad faith, or other improper conduct by any member of the Committee. Therefore, under the circumstances, we conclude that the trial court's protective order did not constitute an abuse of its discretion.

Smith also asserts that the trial court erred in determining that the University was not required to provide a transcript of the Committee's deliberations under its written hearing procedures, which state in relevant part:

"A recording of the hearing or hearings shall be made at the institution's expense and be accessible to both parties."

Smith and an NDEA representative attended the Committee's deliberations. Even if we assume, for purposes of argument, that the term "hearing" includes the deliberation process and that the Committee, therefore, should have recorded the deliberations, Smith has failed to demonstrate that she was prejudiced by the Committee's failure to do so. Thus, it is unnecessary for us to determine whether the foregoing provision required the recording of the deliberations as part of the hearing.

In accordance with this opinion, the judgment of the district court is affirmed.

ERICKSTAD, C.J., and MESCHKE, GIERKE and VANDE WALLE, JJ., concur.