In the Matter of the Grievance of Dr. Mitchel J. BEVILLE, Grievant and Appellant,

v.

UNIVERSITY OF SOUTH DAKO-TA/SOUTH DAKOTA BOARD OF RE-GENTS, Respondent and Appellee.

No. 15635.

Supreme Court of South Dakota.

Argued Oct. 7, 1987.

Decided Feb. 10, 1988.

Celia Miner of Brady, Kabeiseman, Reade & Johnson, Yankton, Wickens, Herzer & Panza, David J. Figuli, Greeley, Colo., for grievant and appellant.

Robert B. Frieberg of Frieberg, Peterson & Travis, Beresford, for respondent and appellee.

DOBBERPUHL, Circuit Judge.

### PRELIMINARY STATEMENT

Grievant Dr. Mitchel J. Beville (Beville) appeals the denial of his tenure review grievance by the circuit court, previously denied by the Department of Labor. On appeal, Beville does not ask this court whether tenure should have been awarded, but whether the required procedures were fairly and equitably applied to him during the tenure application process. Beville also contends that SDCL 1–26 is applicable to the grievance procedure of his employment contract, and that additional evidence should have been admitted by the trial court. We affirm.

### FACTS AND PROCEDURE

Beville was employed at the University of South Dakota in the fall of 1977 as an Associate Professor of Political Science and a Director of the Government Research Bureau. Beville was a member of the Counsel of Higher Education (COHE) bargaining unit and was employed pursuant to the master contract between the Board of Regents (BOR) and the COHE. This contract provides procedures and criteria to be followed in the tenure review process. Beville was eligible for tenure in the 1982–83 academic year, and he initiated such tenure proceedings at that time.

Beville prepared his tenure file which included a personal vitae, student evaluations, supervising faculty evaluations, evidence of academic and non-academic activities, and other appropriate information. As per the BOR/COHE contract, the following committees were to review his tenure application, tenure file, and make a recommendation regarding the award of tenure: the Departmental Committee; the Departmental Chair; the College Commit-

tee; the Dean of the College; the Institutional Committee, and the Vice President for Academic Affairs. After each committee or individual completes the process, the President of the University evaluates all the information and makes his recommendation to the Board of Regents.

The recommendations taken by the respective committees and individuals regarding Beville's tenure application consisted of the following:

 (a) Departmental Committee unanimously recommended tenure;

 (b) Departmental Chair recommended against tenure;

 (c) Committee of the College of Arts and Science unanimously recommended tenure;

 (d) Dean of the College of Arts and Sciences recommended tenure;

 (e) Institutional Committee was divided. Four members were in favor, four members opposed, one member abstained, and one member was absent;

 (f) Vice President for Academic Affairs recommended against tenure;

 (g) The University President, Dr. Joseph McFadden, (President McFadden) recommended against tenure to the Board of Regents;

 (h) The Board of Regents denied tenure.

It is undisputed that certain procedural irregularities occurred concerning the tenure review. First, some of Beville's publications were temporarily separated from his file while committees and individuals were conducting the review. Second, certain letters requested and used by the Committee of the College of Arts and Sciences in their deliberations were not included in the tenure file. Third, the date of the Institutional Committee meeting was three days later than that established by university procedures.

After tenure was denied by the Regents, Beville filed a grievance under the applicable provisions of the BOR/COHE agreement (Article 6.70–6.73). Beville included the aforementioned procedural irregularities and claimed they prejudiced his tenure determination. Step Three of the griev-

ance procedure in the agreement provided for a neutral fact finder to hear a grievance by a disappointed tenure applicant. This hearing allows the parties to obtain witnesses and present evidence. More specifically, Step Three states that the hearing will not be conducted under strict rules of legal evidence and is not a contested case. A Step Three hearing was held which resulted in a finding of recommendation for Beville.

Pursuant to the agreement, the Board reevaluated the application, and in making its final decision, rejected the fact finder's recommendations and issued its own statement of reasons for the rejection.

Beville next filed a notice of appeal with the Department of Labor pursuant to SDCL 3–18–15.2. A hearing was held, and the Department held that the Regents did not violate, misinterpret, or inequitably apply certain provisions of the negotiated agreement between the COHE and the Regents concerning Beville's tenure. On appeal to the circuit court, the Department's decision was affirmed. The circuit court also held that SDCL 1–26 was not applicable to Step 3 of the grievance procedure provided for in the contract. A motion for additional evidence was also denied by the trial court. Beville appeals from that decision.

## STANDARD OF REVIEW

The standard of review for administrative appeals (SDCL 1–26) has recently been clarified in *Permann v. S.D. Dept. of Labor,* 411 N.W.2d 113 (S.D.1987). Initially, we must determine whether the holding involves a finding of fact or conclusion of law. *Schramm v. State Board of Dentistry,* 414 N.W.2d 31 (S.D.1987). This distinction must be made to determine "the proper standard of review; that is, clearly erroneous as opposed to mistake of law." *Schramm, supra; Permann, supra.* Questions of law such as statutory interpretation of SDCL 1–26 are reviewed by this court de novo. *Schramm, supra.* No deference is given to the conclusions of law by the trial court or the agency. However, as to questions of fact, SDCL 1–26–36 pro-

vides that great deference shall be given to agency findings. Thus, the decision of the administrative agency must be upheld unless, in light of the entire record, this decision is clearly erroneous or unless the court is left with a definite and firm conviction that a mistake has been made. *Schramm, supra; Barkdull v. Homestake Mining Co.,* 411 N.W.2d 408 (S.D.1987); *Permann, supra. State Division of Human Rights ex rel. Miller v. Miller,* 349 N.W.2d 42 (S.D.1984); *Dakota Harvestore v. S.D. Department of Revenue,* 331 N.W.2d 828 (S.D.1983). Because the issues of appeal involve both questions of fact and law, they will be reviewed separately under the appropriate standard of review.

### I. TRIAL COURT PROPERLY HELD THAT SDCL 1–26 IS NOT APPLICABLE TO THE BOR/COHE STEP THREE GRIEVANCE PROCEDURE

■ There is no dispute that the BOR did not comply with procedures set out in SDCL 1–26–24[1] or 1–26–25[2] concerning Step Three of the grievance procedure. We hold that these statutory provisions are not applicable to the Step Three grievance procedure because the contract specifically and lawfully excludes those statutory provisions. SDCL 3–18–15.1 allows the Board to establish their own grievance procedures. Grievance, as defined by SDCL 3–18–1.1, includes a complaint by a public employee based upon an alleged violation, misinterpretation, or inequitable application of any existing agreements or contract of any board as they apply to the conditions of employment. Beville alleges procedural irregularities violated the BOR/COHE agreement concerning his employment, a type of grievance provided for in SDCL 3–18–1.1; thus grievance procedures con-

tracted for between the BOR and COHE should apply. After the grievance procedure is exhausted, 3–18–15.2 allows appeals to be made to the Department of Labor. It is at this stage that 1–26 provisions apply, and not any sooner.

■ There is no due process or public policy violation by allowing the parties to contract the resolution of disputes by establishing a grievance procedure. Beville had a procedure to follow, and it was conducted fairly. He is not left without a remedy. SDCL 1–26 provisions are available if and when he appeals to the Department of Labor, so those contested case provisions were not wrongfully withheld from him.

■ Beville cites *South Dakota Board of Regents v. Meierhenry,* 351 N.W.2d 450 (S.D.1984) for the proposition that 1–26 applies at an earlier stage. Beville's interpretation is misplaced. *Meierhenry* allows the Department of Labor to hear professional employee grievances. *Meierhenry* does not prohibit or restrict the board and its faculty union from contracting for additional protection and procedures. Neither does *Meierhenry* require that 1–26 govern contract grievance procedures. As long as fair and adequate grievance procedures are established by collective bargaining, and the grievant is not without a remedy, this court will not replace negotiated terms, particularly when a statute expressly allows and encourages parties to provide grievance procedures without the mandates of SDCL 1–26.

### II. THE TRIAL COURT CORRECTLY DENIED THE MOTION FOR ADDITIONAL EVIDENCE

The trial court denied Beville's motion for additional evidence because it found

the reasons therefor and findings of fact on each issue and conclusions of law necessary to the proposed decision, prepared by the person who conducted the hearing or one who has read the record. The parties by written stipulation may waive compliance with this section.

**1.** 1–26–24 provides: When in a contested case a majority of the officials of the agency who are to render the final decision have not heard the case or read the record, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a tentative or proposed decision is served upon the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs and oral argument to the officials who are to render the decision. The tentative or proposed decision shall contain a statement of

**2.** 1–26–25 provides the type of form, contents and notice of decisions, orders and findings necessary in contested cases.

that he failed to make an adequate showing that this evidence was material and that there were good reasons for failure to present such additional evidence as required by SDCL 1-26-34. The additional evidence Beville seeks to introduce in the record has not been presented to this court in any manner but as a summary in appellant's brief. It is therefore difficult to review the trial court's decision without such evidence. No necessary offer of proof was made. *State v. Sieler*, 397 N.W. 2d 89 (S.D.1986).

■ The motion for additional evidence under SDCL 1-26-34 is discretionary with the court. *State, Division of Human Rights ex rel. Miller v. Miller*, 349 N.W.2d 42 (S.D.1984). We must therefore determine whether the trial court abused its discretion in denying such motion. We agree with the trial court that both materiality and good reason for failure to present such evidence are necessary to grant a motion for additional evidence. We agree with the trial judge that Beville merely concluded and did not make an adequate showing of materiality and good reason for failure to present such evidence. The trial judge did not abuse his discretion in denying such motion.

III. TRIAL COURT PROPERLY DETERMINED THAT BEVILLE WAS NOT PREJUDICED BY ANY FAILURE TO FOLLOW PRESCRIBED GRIEVANCE PROCEDURES PURSUANT TO BOR/COHE CONTRACT

■ Beville argues that procedural irregularities resulting in a faculty tenure determination violated the BOR/COHE agreement. We disagree. The burden in on Beville to show that such violations prejudiced his substantial rights. *Ashland v. South Dakota Dept. of Labor*, 321 N.W.2d 103, 105 (S.D.1982). We hold that the trial court was not clearly erroneous in finding that these procedural irregularities did not prejudice Beville.

■ First, Beville argues that certain publications were missing from his tenure file during the time of his review. It is undisputed that these publications were returned to the file before the Institutional Committee met on December 13. The Committee merely makes a recommendation to President McFadden, who did review all the publications. He also met twice with the Institutional Committee before his final decision was made concerning Beville's tenure. At the lower levels of committees, tenure was recommended even though these publications may have been missing. Therefore, no prejudice resulted, and the trial court was not clearly erroneous in finding no prejudice.

Second, Beville claims prejudicial error and a violation of due process by the consideration of two clarifying letters that were not added to his tenure file by the Institutional Committee. We agree with the trial court that no prejudice resulted from this omission. These clarifying letters were requested by the College Committee when the lower committee and chair disagreed on tenure recommendation. These letters did not add anything to the file, they merely explained and reiterated a previous recommendation.

We further note that these letters were properly and appropriately excluded from the tenure file. The contract does not allow the committees to add anything other than their recommendations to the file. It is the tenure applicant's responsibility to place materials in his file. While it is apparent that Beville would not have known to add these letters to his file, it is to his advantage not to allow materials to be added without his knowledge. Such added material without the knowledge by the applicant could be prejudicial.

■ Third, Beville argues that he was prejudiced because the Institutional Committee met on December 13 rather than December 10, claiming that a student member would have voted for him on the 10th and a tenure recommendation would have then been advanced.

This assertion is speculative and presumptuous. There is no way to determine how the board would have voted on the earlier date. Other members may have

been absent, or those favoring Beville may have voted against him. Even if a recommendation for tenure had been awarded, there is no evidence that President McFadden, the final and crucial recommendation maker, would have acted differently. It's arguable that the extra three days helped Beville, as members had additional time to review his file and application. President McFadden also met with the Committee a second time, when the student member was present to voice her opinion, and he made the same decision. President McFadden conducted a full and fair examination of the application. The trial court was not clearly erroneous in finding no prejudice existed on this issue.

 Finally, Beville claims that a prescriptive plan was not conducted as required by the employment agreement. A prescriptive plan is used to aid teachers performing deficiently. There is evidence that Beville's teaching was adequate, thus a prescriptive plan as defined under the contract would be unnecessary. The contract does not require the use of prescriptive plans for tenure reviews. Article 11.10 of the contract refers to the use of evaluations, not prescriptive plans, for tenure evaluations. There is no common law or contractual right to have deficiencies which could result in a denial of tenure evaluated and monitored through use of a prescriptive plan.

Beville would lead us to believe that objectivity is prevalent in tenure awards, and while we agree that the contract should be followed concerning tenure, tenure is still a subjective process. The contract does not eliminate the subjective element of tenure review; it merely offers guidelines. Tenure is more than teaching—it also includes research and service.

 While this court does not condone the procedural irregularities that occurred in Beville's tenure review, we believe the review process was fair and afforded Beville his due process rights.[3] We will not second guess the experienced, professional judgment of the University and Board of Regents when the applicable procedures were substantially complied with and substantial interests of the parties were satisfied. *Smith v. State of North Dakota*, 389 N.W.2d 808 (N.D.1986); *Piacitelli v. Southern Utah State College*, 636 P.2d 1063 (Utah 1981). The review need not be perfect, but fairly and fully conducted to protect an individual's source of livelihood—employment.

WUEST, C.J., and MORGAN and HENDERSON, JJ., concur.

SABERS, J., dissents.

DOBBERPUHL, Circuit Judge, sitting for MILLER, J., disqualified.

SABERS, Justice (dissenting).

I dissent on Issue 3 because:

THE TRIAL COURT ERRED IN DETERMINING BEVILLE WAS NOT PREJUDICED BY FAILURES TO FOLLOW TENURE PROCEDURES PURSUANT TO BOR/COHE CONTRACT

After acknowledging that "[i]t is undisputed that certain procedural irregularities occurred concerning the tenure review," the majority opinion (opinion) concludes, without conducting sufficient analysis under the appropriate standard of review, that no prejudice occurred.

### 1. *Publications*

Certain of Beville's publications were missing from his tenure file during part of the tenure review process. The opinion finds no prejudice to Beville because 1) President McFadden reviewed all of the publications, 2) lower levels in the committee chain, which may not have seen the publications, still recommended tenure, and 3) the publications were replaced in Beville's tenure file prior to the meeting of the Institutional Committee. The opinion's review of the facts neglects several important points. First, although the publications were returned to the file before the Institutional Committee met, five members had reviewed Beville's file before the publi-

---

3. Recently, this court has not hesitated to overturn hearing procedures that were so fundamentally flawed that due process was violated. *See Schramm, supra.*

cations were replaced,[1] and the publications were replaced only five days before the Committee met. The importance of a review of all the publications by all the committee members is apparent from the Institutional Committee's report which noted that "[d]iscussion centered primarily on the kind of publications submitted in support of his [Beville's] candidacy." Beville's publications were a main focus of the tenure review. Second, it is acknowledged that the determination to award or deny tenure has a subjective component. By applying relatively objective criteria, each level in the tenure process forms a subjective opinion which results in a recommendation. The solidity and force of that recommendation is affected by the existence of objective facts and information to substantiate the decision. Without evidence that all members of the Institutional Committee reviewed *all* of the publications prior to the Committee meeting, it is impossible to say that the committee members made rational, informed decisions on the issue of Beville's publications. Although the opinion holds that no prejudice resulted from this situation because President McFadden saw all the publications and decided to recommend no tenure, it ignores McFadden's letters to Beville (January 27, 1983 and February 9, 1983) which indicate he was heavily influenced by the Institutional Committee vote.

### 2. *Clarifying Letters*

The opinion states that the omitted clarifying letters, requested by the College Committee of the Department Chair and the Departmental Committee, "merely explained and reiterated a previous recommendation." "Merely" seems an inappropriate word when the apparent conflict between the Departmental Committee's recommendation and the Chair's recommendation continued to be of concern through the chain of committees. Dr. Butwell (Vice President and Chair of the Institutional Committee) personally discussed the Department Chair's adverse recommendation with the Chair. President McFadden deemed this to be appropriate "clarifica-

tion" (Letter of April 11, 1983, from McFadden to Beville, p. 2). However, Vice President Butwell apparently did not need to have the Departmental Committee's recommendation clarified. The BOR position is apparently that solicited clarifications are legitimate when they deem them so.

The opinion and the trial court find that the addition of the clarifying letters to the tenure file would have been inappropriate because the BOR/COHE contract places the responsibility for preparing file documentation on the faculty member and the contract is silent about any other person adding material to the file. The opinion interprets the word "recommendation" strictly when applied to the "clarifying letters" but ignores the fact that several of the "recommendations" at other levels provided explanations for the committee or individual decision. Additionally, the opinion and the trial court chose to ignore the memo dealing with tenure review policies, issued by Vice President Butwell on September 29, 1982, which stated that each tenure committee level would forward to the next level their recommendation *"with all material used in the review."* In other words, the opinion condones the administration/BOR position that they need not be held to their own written interpretation of the contract procedures.

This record results in the inescapable conclusion that *if all* materials utilized by the College Committee should have been forwarded, then the failure to do so violated the wording of regulations and the intent of the agreement. If, however, the College Committee was correct in not incorporating the clarifying letters in the forwarded tenure file, then a violation of the contract occurred when similar *oral* clarifications were introduced and forwarded to other levels in the review process. (*See* section 4.)

### 3. *Late Date for Meeting*

The opinion found no prejudice resulted from the fact that the Institutional Committee met on December 13th, rather than December 10th, in clear violation of the

1. The record indicates that these committee members were informed of the replacement, but there is no indication that the publications were reviewed.

BOR/COHE agreement which requires that recommendations of the institutional committee *"will* be submitted to the President by *no later* than December 10 of each academic year." (emphasis added) (§ 11.-10, ¶ 8) Section 1.19 states: " 'Will' is a verb having the mandatory sense of 'shall' or 'must'. It is a word of certainty...." There can be no question that a clear violation of the contract terms occurred. Prejudice to the applicant resulted from this violation because:

1) The violation in section 1 created a problem, and this error compounded the problem;

2) Contracts which contain specific time limitations can be assumed to have such limitations for a purpose. A reading of the designated time sections in this contract make it obvious that the purpose here was to avoid time conflicts with the end of the semester. The end of the semester creates time and attendance problems for faculty and students. These time lines were meant to prevent exactly what happened here: a student committee member was unable to attend a meeting because the late date pushed the meeting time into conflict with end of the term concerns, i.e., final exams.

### 4. *Constructive Plan*

The opinion asserts that Beville claims that a constructive (or prescriptive) plan was not conducted as required by the contract. The opinion misstates or misunderstands Beville's claim. The claim is built on a premise. *If* Dr. Dahlin (Dep't Chair) did not support Beville's tenure because of, in his own words, "deficiencies" in Beville's performance, then he was required to note these deficiencies in Beville's evaluations and provide a constructive plan, under the terms of the contract. The contract clearly ties the results of performance evaluations to tenure considerations. BOR/COHE Agreement, § 9.10 states in part: "The purpose of the evaluation will be to: ... (4) Provide information for personnel decisions such as tenure and promotion." Therefore,

because the performance evaluations and the *procedures* regulating them are incorporated into the tenure process, an applicant is not given a meaningful opportunity to respond to alleged deficiencies in performance where no notice of these deficiencies is provided. The contract calls for performance evaluations to be utilized in tenure considerations. The performance evaluation is designed to notify the teacher and the administration of deficiencies, so that these deficiencies can be corrected. If the teacher/tenure applicant is never notified of any deficiencies he has no notice. When positive performance evaluations have no meaning, because they do not accurately portray the evaluated performance, the teacher/tenure applicant has no opportunity to respond.

The determination here must be resolved by reference to the contract between the disputing parties. The Dep't Chair alleged deficiencies in Beville's performance in his clarifying letter and his discussions with Dr. Butwell. While President McFadden asserts there was nothing wrong with these "clarifications" by the Dep't Chair, the contract does not provide for them and they are contradictory to the mandated inclusion and consideration of prior performance evaluations, all of which were "acceptable to excellent" for a period of six years.[2]

Section 11.10, ¶ 7 states: "The performance record of a faculty unit member considered for tenure will be based upon performance evaluations conducted by the administration during all years of service credited toward tenure qualification." The only fair reading which can be given this section is that the tenure applicant's performance record is based upon the evaluations and it is improper, violative of the contractual procedures and highly prejudicial for ex parte allegations of deficiencies to be inserted into the process.

### 5. *Prejudice*

The Board of Regents has the right and power to hire, fire, promote or dismiss its

---

**2.** The majority of Beville's performance evalua-

tions rated him "excellent" in all areas.

employees. There is no right to tenure[3] under the State Constitution, statutes or the negotiated contract. However, under our decision in *Board of Regents v. Carter*, 89 S.D. 40, 228 N.W.2d 621 (1975), SDCL 3–18 is a constitutional, permissible restriction on the exercise of the Board of Regent's right to control salaries and employment decisions and qualifications. *Id.*, 228 N.W.2d at 628. Therefore, the Board is bound by the contract procedures to which it, in good faith, agreed. *See Trimboli v. Board of Ed. of County of Wayne*, 163 W.Va. 1, 254 S.E.2d 561 (1979).

The grievant bears the burden of showing that violations of procedural requirements prejudiced those substantial rights which the procedures were designed to protect, and no prejudice results if "substantial compliance" with the procedures results in satisfying the purpose for the procedures. *Smith v. State*, 389 N.W.2d 808, 810 (N.D.1986).

In order to determine if prejudice occurred what must be done—and what the opinion has failed to do—is to identify the purpose for the procedural requirements, i.e., the interests the procedures were designed to protect. "[T]he interpretation of regulations to ascertain their purpose is a question of law[.]" *Smith, supra* at 810. "[I]n determining the proper interpretation of a contract the court must seek to ascertain and give effect to the intention of the parties." *Malcolm v. Malcolm*, 365 N.W. 2d 863, 865 (S.D.1985).

The purpose of the contract terms concerning tenure procedure reflect the interests of the two parties. The BOR is interested in providing the state educational institutions with faculty who have demonstrated excellence in performance. (BOR Policy Manual, § 5.3.5 (1981), § 5–3–7(a) (1985)). COHE undoubtedly shares this interest, but, additionally, is interested in providing for an agreement which is beneficial to its members. SDCL 3–18–2 and the BOR/COHE agreement limit the scope of the agreement to rates of pay, wages,

hours of employment, and other conditions of employment. Tenure falls within "conditions of employment." The Board cannot, constitutionally, delegate the power to make tenure decisions, therefore, the Board could only contract with COHE for procedural requirements, i.e., *how* the decisions will be made. COHE's interest is in eliminating whim and caprice from the decision-making process and restricting the scope of the tenure review to appropriate subject matter.

Sections 9.10 and 11.10 of the contract tie the written performance evaluations to the tenure process. The contract, however, makes no provision for any other method of evaluating the performance record of the tenure applicant. Even the subjective recommendation of each level is to be based on an assessment of past performance evaluations. The stipulation of the parties is that Dr. Dahlin discussed his allegations of deficiencies in Beville's performance twice with Dr. Butwell. Dr. Dahlin also, at the request of the College Committee, wrote a letter discussing deficiencies in Beville's performance. If these deficiencies existed, then they should have been apparent from the performance evaluations. Beville had no meaningful notice of problems with his performance and no opportunity to respond to these perceptions of deficiencies. Dr. Dahlin was aware that Beville was under a tenure track contract; he had a number of years to provide a constructive plan to assist Beville in correcting any deficiencies. Instead, Dr. Dahlin did not alert Beville as to any problems in his performance and then acted impermissibly, along with Dr. Butwell, in going outside the mandated procedures to insert undocumented allegations. It is precisely this type of subjective and capricious action which the mandated procedures were designed to eliminate. Beville's interest in a fair review of his tenure application was seriously prejudiced by these actions. This violation alone should entitle Beville to a reversal of this decision. The cumulative

---

**3.** It should be noted that the issue is tenure and not dismissal (although under § 11.30 and § 8.60, it appears that denial of tenure to a tenure track faculty member results in "non-renewal").

effect of all of these violations clearly requires reversal.